# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT ALVAREZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DR. TERRANCE P. BAKER, DR. BRENNAN, DR. ) <br> KEVIN SIMS, DR. SALIM J. DAWALIBI, DR. JUDI ) <br> LIU, DR. YAN K YU DO, DR. VICTOR PELAEZ, ) <br> DR. GLEN TRAMMEL, DR. MELANIE-WATSON ) <br> MONTGOMERY, DR. THOMAS PROSOROVSKY, ) <br> DR. RANDY RABIN, DRS. JOHN DOE, MIOSHI ) <br> BRITTMAN, MELVIN JUDKINS, DONNA BROWN, ) <br> KIM ANDERSON, HIROKO GOODFRIEND, ) <br> PATRICIA HAYES, CHIDINMA ONYEACHONAM, ) <br> RAVEN REYNOLDS, KIM ANDERSON, RONALD ) <br> ROSE, FLORENCE EBERMICHAEL, JUDY PRICE, ) <br> MANISHA PATEL, OLIVER FRANK, JEANETTE ) <br> CROFTON, NANCY CHACKUMKAL, GEORGE ) <br> KROECK, GERALD LOGUE, JACQUELINE JACK, ) <br> RYSZARD FILIPOWICZ, JOHN and JANE DOES, ) <br> and COUNTY OF COOK, ) <br> ) <br> Defendants. ) | No. 14 C 4208 <br><br> Judge Jorge Alonso |

## ORDER

Plaintiff, Robert Alvarez, brings this action against various doctors and health care workers who were responsible for obtaining or providing medical care to plaintiff while he was an inmate of the Cook County Jail ("the Jail"). Plaintiff claims that defendants violated his Fourteenth Amendment due process rights and are liable to him for their deliberate indifference to his need for proper medical treatment after suffering a broken cheek bone while incarcerated in the Jail. Certain of the defendants have moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the defendants' motion is granted in part and denied in part.

## BACKGROUND

The allegations relevant to the defendants' motion to dismiss are as follows. On July 21, 2013, while plaintiff was detained and incarcerated at the Jail, he was attacked and beaten by a group of approximately a dozen other inmates, suffering serious injuries. (4th Am. Compl., ¶¶ 3, 26, ECF No. 47.) He was examined by correctional officers, who observed that his injuries included "severe facial damage" and stab wounds to his back and right leg. (*Id.*, ¶ 27.) Plaintiff told the officers that he was having blackouts and in severe pain, and he asked to be taken to Cook County Cermak Health Services ("Cermak"), the Jail's on-site infirmary. (*Id.*, ¶¶ 32-33.) The officers locked him in a holding cell in Division 1 of the Jail, without providing any medical care. (*Id.*, ¶ 33.) Plaintiff asked for a tissue to blow his nose, which was bleeding profusely, but when he blew his nose, it swelled rapidly. (*Id.*, ¶¶ 33-34.) The swelling spread to his left cheek and left eye, and plaintiff began suffering blackouts. (*Id.*, ¶ 34.)

Approximately two hours after the beating, plaintiff was taken to Cermak and examined by defendant Dr. Yan K Yo Do. (*Id.*, ¶¶ 36-38.) Plaintiff asked Dr. Yo Do if he could be taken to a hospital for treatment of his serious injuries, which included not only the blackouts, bloody nose, swollen face, and stab wounds, but the displacement of a wire that was in his mouth from a previous injury and had become dislodged. (*Id.*, ¶ 38.) Dr. Yo Do said that he would not consider sending plaintiff to a hospital until after he had a CAT scan, which could not be done until the following day. (*Id.*) Plaintiff was given ice packs and ibuprofen, but no other medical treatment. (*Id.*)

The next day, plaintiff had a CAT scan at Cermak, and he told the technician that he needed to see a doctor because he was in tremendous plain and still suffering blackouts. (*Id.*, ¶

39.) The technician told him that he could not see a doctor, but he could fill out a "yellow medical form" if he wanted to request an appointment with a doctor. (*Id.*, ¶ 40.)

After his CAT scan, plaintiff was relocated to a different tier within Division 1 of the Jail. (*Id.*, ¶ 42.) His new tier, tier H1, was composed only of inmates like plaintiff who were over 40 and had no gang affiliation. (*Id.*) Plaintiff brought his injuries to the attention of the officers overseeing the tier, and these officers made phone calls in an attempt to obtain medical attention for plaintiff, but plaintiff received no further medical attention until August 9, 2013. (*Id.*, ¶ 43.)

Plaintiff is a diabetic, and during his incarceration in the Jail he made regular, thrice-weekly visits to the dispensary to check his glucose levels. (*Id.*, ¶¶ 21, 44.) During his visits to the dispensary between July 22, 2013 and August 9, 2013, he informed Dr. Kevin Sims and Dr. Baker of his injuries, his pain, and his recurrent blackouts and bloody noses. (*Id.*, ¶ 45.) Dr. Sims and Dr. Baker told Officer Casale and paramedic George Kroeck to provide plaintiff icepacks, but provided no other treatment, despite Officer Casale and Kroeck's attempts to get plaintiff an appointment with a doctor. (*Id.*, ¶¶ 46-47.)

On August 2, 2013, plaintiff was examined by Dr. Baker. (*Id.*, ¶ 48.) Plaintiff told him that the injuries, pain and blackouts were only getting worse. (*Id.*) Dr. Baker asked plaintiff if he knew that his cheek bone was broken in four places. (*Id.*, ¶ 49.) Plaintiff responded that he did not. (*Id.*) Plaintiff asked again to go to a hospital, and Dr. Baker responded that he would make an appointment for plaintiff to go to Stroger Hospital ("Stroger") the following week. (*Id.*, ¶¶ 50-51.) Dr. Baker told plaintiff that plaintiff clearly required surgery, but because his cheek bone was "still in place," it would be "ok . . . to wait." (*Id.*, ¶ 51.) Plaintiff replied that he was still in a great deal of pain and still suffering blackouts. (*Id.*, ¶ 52.) Dr. Baker responded, as plaintiff paraphrases, "Don't make this hard or you will end up in segregation." (*Id.*, ¶ 53.)

On August 7, 2013, Dr. Brennan examined plaintiff at Stroger. (*Id.*, ¶ 56.) She told plaintiff that not only was his cheek bone broken in four places, it was severely displaced from its proper configuration and was healing improperly. (*Id.*, ¶¶ 56-57.) She said that Dr. Baker should not have administered ice packs, which had caused the bone to heal improperly, and plaintiff's cheek bone would have to be re-broken before surgery, which plaintiff needed urgently. (*Id.*, ¶¶ 57-59.) Additionally, plaintiff had a torn blood vessel in his face. (*Id.*, ¶ 57.)

Dr. Brennan told plaintiff that, as urgent as the need for surgery was, the surgery could not be scheduled immediately because the hospital had to receive approval from a supervisor. (*Id.*, ¶ 60.) Plaintiff had surgery two days later, on August 9, 2016. (*Id.*, ¶ 63.)

After the surgery, plaintiff did not receive the medication he needed for his diabetes or his recovery from surgery. (*Id.*, ¶¶ 63-69.) He did not receive any pain medication of any kind for several days, despite making numerous complaints and submitting several "yellow forms." (*Id.*, ¶ 71.) The nursing staff told him that it takes two or three days for prescribed medication to reach Division 10 of the Jail, where he was now housed. (*Id.*) On August 14, 2013, plaintiff was told that the pain medication Dr. Brennan had prescribed had expired. (*Id.*)

For some time after the surgery, plaintiff received only acetaminophen, not the medication Dr. Brennan had prescribed. (*Id.*, ¶ 72.) He would periodically have to go for long periods of time without any pain medication at all. (*Id.*, ¶¶ 72-73.) When the Ear, Nose and Throat ("ENT") unit at Stroger prescribed pain medication, it would take two to three days to reach him at Division 10, if he received it at all. (*Id.*, ¶ 72.) It was only in March 2014 that he finally received a relatively regular supply of Naproxen to treat his pain. (*Id.*, ¶ 73.)

On October 21, 2013, plaintiff had a scheduled appointment at Stroger, but Jail staff failed to transport him from the Jail to the hospital, without giving any reason, and plaintiff was labeled a "No Show." (*Id.*, ¶ 74.)

On December 26, 2013, Dr. Judy Liu of Stroger's ENT Clinic examined plaintiff. (*Id.*, ¶ 75.) Dr. Liu prescribed plaintiff Tylenol #3, muscle relaxants, and an oral rinse. (*Id.*) However, Jail employees, including Dr. Salim J. Dawalibi and Nurse Nancy Chackumkal, refused to administer the Tylenol #3 and muscle relaxants because they are "very addictive." (*Id.*) Chackumkal informed plaintiff that only a Cermak doctor who had already refused to reorder medication previously ordered by Dr. Liu, despite Dr. Liu's intent that her prescription should "carry over to Division 10 for [p]laintiff's health needs, could order or reorder medication for him[,] and that a doctor from Cermak could not prescribe or re-prescribe medication for him and 'that's the way things are done at Cook County Cermak Health Services.'" (*Id.*)

Plaintiff never received any effective treatment for the wire sticking out of his gum tissues, which caused tremendous pain even after the August 9, 2013 surgery. (*Id.*, ¶¶ 77, 79.) A "dental doctor-oral surgeon" at Stroger examined him and ordered a CAT scan to be taken at Cermak, saying that plaintiff clearly needed further surgery. (*Id.*, ¶ 78.) A CAT scan appointment was set for February 26, 2014, but the Jail staff refused to take him to this appointment. (*Id.*) He did not receive the CAT scan until March 8, 2014. (*Id.*) This CAT scan indicated that plaintiff required a second surgery on his face. (*Id.*, ¶ 79.) On October 18, 2014, Dr. Schoen examined plaintiff at the Division 10 dispensary, and he told plaintiff that he needed to be seen by doctors at Stroger immediately for a second surgery. (*Id.*, ¶ 81.) But plaintiff never received a second surgery or any explanation for why he has never received it. (*Id.*) Plaintiff alleges that defendants "Dr. Melanie Watson-Montgomery, Dr. Thomas Prosorovsky,

and Dr. Randy Rabin have not obtained, provided or performed the required surgery." (*Id.*, ¶ 79; *see also id.*, ¶¶ 80-82.)

## ANALYSIS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Certain defendants have moved to dismiss, contending that (1) plaintiff does not make any allegations against Dr. Yan K Yo Do, George Kroeck and Nancy Chuckamkal that, even if proved, would show that they intentionally or recklessly disregarded plaintiff's serious medical

condition, (2) plaintiff makes no allegations of personal wrongdoing against Drs. Watson-Montgomery, Prosorovsky, and Rabin, and (3) he makes improper group allegations against a number of health care workers for a general failure to provide medical care, without making any specific factual allegations against any one of them personally.

I.  **DISREGARD OF SERIOUS MEDICAL CONDITION**

Defendants Yan K Yo Do, George Kroeck and Nancy Chuckamkal contend that the claims against them should be dismissed because plaintiff does not allege that they intentionally or recklessly disregarded a serious medical condition.

Jail officials violate an inmate's constitutional rights "when they display 'deliberate indifference to serious medical needs'" of the inmate. *See Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998) (explaining that deliberate indifference claims brought by pretrial detainees against jail personnel arise under the Fourteenth Amendment rather than the Eighth Amendment but are analyzed under the same standard). Jail officials may exhibit deliberate indifference to a known condition through inaction, *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010); *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 832 (7th Cir. 2009), or by delaying necessary treatment and thus aggravating an injury or needlessly prolonging an inmate's pain, *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012). To prevail on a claim of deliberate indifference, a plaintiff must show both that he suffered from an objectively serious medical condition and that the defendant ignored a serious risk to the inmate's health. *See Greeno*, 414 F.3d at 653.

### A. Dr. Yan K Yo Do

Dr. Yan K Yo Do contends that the only actions plaintiff alleges him to have taken are examining plaintiff on the day of the injury, determining that a CAT scan was necessary, ordering one for the following day, and giving plaintiff ibuprofen and ice packs to ease the pain and swelling in the interim. According to Dr. Yo Do, based on these facts, plaintiff alleges not that Dr. Yo Do disregarded a serious medical condition, but that he treated one. Plaintiff claims that Dr. Yo Do violated plaintiff's civil rights by declining to send him to a hospital immediately, but, Dr. Yo Do argues, plaintiff's right to medical care does not include the right to determine the course of treatment for himself. *See Meriweather v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987). Dr. Yo Do examined plaintiff and decided to treat him with ice and ibuprofen and a CAT scan the following day; even if that was malpractice, it does not trouble the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")

The Court disagrees. Plaintiff describes grievous injuries, including a cheek bone broken in four places with significant bleeding and swelling, and he claims he was suffering blackouts. If the injuries he suffered in the July 21, 2013 beating were as serious as he alleges, it is plausible that plaintiff needed to go to a hospital for further examination and treatment immediately, not the next day. To put that in constitutional terms, it is plausible that, despite the fact that Dr. Yo Do did not totally ignore him, the treatment he provided was "blatantly inappropriate," because he was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," but he disregarded the risk by delaying treatment. *See Greeno v. Daley*, 414 F.3d 645, 653-54 (7th Cir. 2005). Dr. Yan K Yo Do's motion is denied.

**B. George Kroeck**

George Kroeck argues that he should be dismissed because the only actions he is alleged to have taken are giving plaintiff ice, at a doctor's direction, and "repeatedly tr[ying] to have doctors see [p]lainiff Alvarez." (4th Am. Compl., ¶¶ 46-47.) The Court agrees. Far from accusing him of disregarding plaintiff's serious medical condition, plaintiff actually credits Kroeck with attempting to procure for him the medical attention that he required.

Plaintiff responds by pointing out that he also makes allegations against Kroeck in Count VI of the complaint, particularly paragraphs 97 through 99. As the Court will explain below, these allegations are also insufficient to state a claim against Kroeck. Kroeck's motion to dismiss is granted.

**C. Nancy Chackumkal**

Nancy Chackumkal argues that she should be dismissed because the only actions she is alleged to have taken are declining to give plaintiff medication prescribed by Dr. Liu following his surgery while informing him that Jail policy prevented her from giving plaintiff that medication without approval from a Jail doctor. (*See* 4th Am. Compl., ¶ 75.) Chackumkal argues that plaintiff fails to state a claim against her because she was entitled to rely on a doctor's orders for prescription medication and she had no authority to prescribe medication herself. *See Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012). According to Chackumkal, she cannot be held liable for acting as directed by the doctors who supervised her.

Nurses may generally defer to instructions given by physicians, but they "may not unthinkingly defer to physicians and ignore obvious risks to an inmate's health." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 683 (7th Cir. 2012) (citing *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010)). The only specific allegations against Nurse Chackumkal are in the last

sentence of paragraph 75, where plaintiff alleges that, following his December 26, 2013 appointment with Dr. Judy Liu, at which Dr. Liu prescribed pain medication, he was "informed by Nurse Nancy Chackumkal that . . . only the doctor from Cermak who had refused to reorder medication previously ordered by Dr. Judy Liu on January 26, 2014, to carryover to Division 10 for [p]laintiff's health needs, could order or reorder medication for him and that a doctor from Cermak could not prescribe or re[-]prescribe medication for him and 'that's the way things are done at Cook County Cermak Health Services.'" These allegations are hardly a model of clarity, but to the extent that the Court can make sense of them, it appears that Nurse Chackumkal relied and acted on the orders of "the doctor from Cermak who had refused to reorder medication." She was entitled to do that unless there was an obvious risk to plaintiff's health, but plaintiff does not allege that at that point, more than four months after his surgery, his face was still swollen and bleeding such that it would have been obvious to Nurse Chackumkal that he needed the medication he was seeking, despite an order from a doctor to the contrary.

Plaintiff has not alleged that Nurse Chackumkal ignored obvious risks to plaintiff's health. He fails to state a claim against her, and the Court grants her motion to dismiss.

## II. LACK OF PERSONAL INVOLVEMENT IN COUNT IV

In Count IV of the complaint, plaintiff alleges that he never received the medical attention he required for the wire sticking out of his gum. He alleges that he was examined and told by an unnamed "dental doctor – oral surgeon," unnamed members of the "dental unit at Stroger," and a Dr. Schoen that this condition required a second surgery, but defendants "Dr. Melanie Watson-Montgomery, Dr. Thomas Prosorovsky, and Dr. Randy Rabin have not obtained, provided or performed the required surgery." (4th Am. Compl., ¶ 79; *see also id.*, ¶¶ 80-82.) Drs. Melanie Watson-Montgomery, Thomas Prosorovsky, and Randy Rabin argue that

there are no specific allegations against them of any particular wrongdoing. Plaintiff does not allege that he ever requested to see any of them in particular or that any of them examined him. In short, plaintiff does not allege that any of them was personally involved in any deprivation of medical care that plaintiff may have suffered. *See Grieveson v. Anderson*, 538 F.3d 763, 777–78 (7th Cir. 2008) (plaintiff must tie actions of named defendants to injuries suffered); *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) (plaintiff must make allegations of defendant's personal involvement to survive dismissal).

Plaintiff makes no serious response. The claims against Drs. Watson-Montgomery, Prosorovsky, and Rabin are dismissed.

### III. GROUP ALLEGATIONS IN COUNTS VI AND VII

In Count VI, plaintiff names fifteen individuals[1] who allegedly worked for "Cook County Health and Hospitals System" and who had the duty to examine and provide medical care for detainees at the Jail. (4th Am. Compl., ¶ 90-91.) He alleges that all of the individuals named in Count VI "performed various medical examinations and determinations" on plaintiff, "noticed and observed the very severe conditions requiring treatment," but "failed to take action or any adequate action." (*Id.*, ¶¶ 92-93.)

In Count VII, plaintiff names four Cermak employees—George Kroeck, Gerald Logue, Jacqueline Jack and Ryszard Filipowicz—who "had the duty to examine detainees at the Jail and take appropriate steps to ameliorate any medical conditions that their effort revealed," but they "simply refused to perform their examinations and other tasks. Instead, they made up a multitude of implausible and unbelievabl[e] excuses for not doing so. These included, 'Not

---

[1] The fifteen defendants named in Count VI are Mioshi Brittman, Melvin Judkins, Donna Brown, Kim Anderson, Hiroko Goodfriend, Patricia Hayes, Chidinma Onyeachonam, Raven Reynolds, Ronald Rose, Florence Ebermichael, Judy Price, Manisha Patel, Oliver Frank, Jeanette Crofton, and Nancy Chackumkal.

11

Done – Task Duplication,' 'Not Done – Schedule Conflict,' 'Patient No Show for all due Medications Today,' and most notably, 'Not Done: Patient out on Pass.'"   (*Id.*, ¶¶ 97-98.)

Defendants argue that the claims in these counts represent improper group pleading because they do not tie any particular individuals to any particular acts or omissions. According to the defendants, the allegations of Counts VI and VII essentially state only that plaintiff received inadequate health care while he was a Jail detainee and that defendants were health care workers charged with obtaining or providing health care for him while he was a Jail detainee, without sufficiently connecting the conduct of these defendants to plaintiff's injuries or alleging that they acted with knowing disregard for plaintiff's serious medical needs.

The Court agrees with defendants. As to Count VI, plaintiff cannot baldly claim that fifteen people failed to provide medical care without providing any details about who did what when, and what they knew when they did it. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful."). These allegations do not describe particular incidents in which one of the defendants became aware of a serious medical need and disregarded it, nor do they contain any facts that provide sufficient notice to each defendant as to what precisely he or she is alleged to have done or, having had a specific opportunity to do, omitted to do. Plaintiff alleges that all of the defendants examined plaintiff and ignored "severe conditions requiring treatment," but divorced from any particular factual context, this is no more than a formulaic recitation of the elements of the claim. *See Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009). The motion to dismiss is granted as to Count VI and the defendants named therein.

Count VII does include some details, however meager, to add something more than a formulaic recitation of elements of the cause of action: it includes what appears to be the

language, perhaps lifted from documents plaintiff has obtained, of excuses the Count VII defendants made for failing to examine plaintiff on particular occasions. Plaintiff does not allege the dates of those occasions or of the excuses, or provide any further details about them to tie specific defendants to specific instances of misconduct.[2] Further, plaintiff alleges only that these defendants shirked their duties to check on plaintiff; plaintiff does not allege, even conclusorily, that the Count VII defendants were actually aware of a serious medical risk that required their attention. Thus, plaintiff fails to state a claim in Count VII. The motion to dismiss is granted as to Count VII and the defendants named therein.

---

[2] If the reason plaintiff's allegations are not more detailed is that plaintiff cannot determine without discovery which of the four Count VII defendants made which excuses on which occasion, then this defect is not necessarily fatal to plaintiff's claim. *See, e.g.*, *Kuri v. City of Chi.*, No. 13 C 1653, 2014 WL 114283, at *7 (N.D. Ill. Jan. 10, 2014) ("A plaintiff may not be able to specify which individual committed which parts of the alleged misconduct before the benefit of discovery."); *Vandenburgh v. Bannockburn Police Officer Robert Ogden*, No. 15 C 6191, 2016 WL 403663, at *5 (N.D. Ill. Feb. 3, 2016). But plaintiff does not make that argument. Nor has plaintiff alleged that either the Count VI or Count VII defendants had supervisory or policymaking responsibility for the customs and practices of Cook County in providing health care to Jail detainees, as the Sheriff might, for example. *See, e.g., Aleman v. Dart*, No. 09-CV-6049, 2010 WL 4876720, at *5-7 (N.D. Ill. Nov. 23, 2010); *see also Daniel v. Cook Cty.*, No. 15-2832, 2016 WL 4254934, at *3-7 (7th Cir. Aug. 12, 2016) ("In this case, [plaintiff] has not tried to hold any one doctor responsible for his injury. On this record, it is hard to see how he might have done so. This case reflects a common scenario: an institution structured its affairs so that no one person was responsible for [the inmate's] care, and such diffused responsibility can make it very difficult to show individual responsibility for health care failures. [Plaintiff] contends instead that the delays and confusion that caused his injury were caused by systemic problems in the health care system for the Cook County Jail that reflect deliberate indifference to inmates' health needs as a matter of official custom, policy, or practice. . . . [Plaintiff] has . . . offered substantial evidence that Sheriff Dart, who is a relevant policymaker for health care for Jail inmates, knew of these deficiencies and failed to take reasonable corrective action.") (internal citations and quotations omitted).

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss [49] is granted in part and denied in part. The motion is granted as to the defendants named in Counts IV, VI and VII, including Nancy Chackumkal and George Kroeck, but denied as to Dr. Yan K Yo Do. Plaintiff may file an amended complaint by October 17, 2016. A status hearing is set for October 5, 2016, at 9:30 a.m.

**SO ORDERED.**

**ENTERED:** September 23, 2016

_____
**HON. JORGE L. ALONSO**
**United States District Judge**